**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| A PTY LTD., | |
| **Plaintiff,** | Civil Action No. 1:15-CV-154-RP |
| v. | |
| AMAZON.COM, INC., | **JURY DEMAND** |
| **Defendant.** | |

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Michael Merriman (#24085975)
mmerriman@scottdoug.com
SCOTT DOUGLASS &
  MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 474-0731

Adam K. Mortara (*pro hac vice*)
adam.mortara@bartlit-beck.com
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440

Nosson D. Knobloch (*pro hac vice*)
nosson.knobloch@bartlti-beck.com
John M Hughes (*pro hac vice*)
john.hughes@bartlit-beck.com
Daniel C. Taylor (*pro hac vice*)
daniel.taylor@bartlit-beck.com
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
1899 Wynkoop Street, Suite 800
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140

Counsel for Defendant
AMAZON.COM, INC.

TABLE OF CONTENTS

PAGE

RELATIONSHIP TO BRIEFING IN RELATED CASES ........................................... iv

I.      INTRODUCTION ................................................................................... 1

II.     BACKGROUND .................................................................................... 2

        A.      The '572 Patent ........................................................................ 3

        B.      The § 101 Issue is Ripe for Determination ............................. 3

III.    LEGAL STANDARDS ........................................................................... 4

        A.      Judgment on the Pleadings Under Rule 12(c) is Appropriate in this Case. .......... 4

        B.      35 U.S.C. § 101 and Controlling Case Law ........................... 5

IV.     ARGUMENT ......................................................................................... 6

        A.      *Alice* Step One: Using Information In A Message's Destination Address To Look Up The Recipient's Correct Address Is An "Abstract Idea." ................. 6

        B.      *Alice* Step Two:  The '572 Claims Add Nothing to the Abstract Idea Except a Field of Use or the Use of Well-Known, Routine, Conventional Elements. ........................................ 8

        C.      Each of the Asserted Claims Fails the Two-Part *Alice* Test ................ 10

        D.      The Agreed Construction of "email address" Confirms that the '572 Patent is Directed to an Abstract Idea Applied Using Well-Known, Routine, Conventional Means. ........................................ 15

V.      CONCLUSION .................................................................................... 18

TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Affinity Labs of Texas, LLC v. Amazon.Com, Inc.*,
No. 6:15-CV-0029-WSS-JCM, 2015 WL 3757497 (W.D. Tex. June 12, 2015) ...............5, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ............................................................................................ *passim*

*Bancorp Svcs., LLC v. Sun Life Assurance Co. of Canada*,
687 F.3d 1266 (Fed. Cir. 2012) ...........................................................................17

*Bilski v. Kappos*,
561 U.S. 593 (2010) .....................................................................................7

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ...............................................................5, 8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................7

*CyberFone Sys., LLC v. Lexmark Int'l, Inc.*,
__ F. Supp. 3d __, No. 14-489-SLR, 2015 WL 5906859 (D. Del. Oct. 8, 2015) .....................5

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ....................................................................7, 8

*DDR Holdings, LLC v. Hotels.com*,
773 F.3d 1245 (Fed. Cir. 2014) .......................................................6, 15, 16, 17

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ...................................................................7, 14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ............................................................................4

*GT Nexus v. Inttra, Inc.*,
No. C 11-02145-SBA, 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015) .....................................5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ...........................................................................9

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014) ....................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ..............................................................................2, 6, 8

TABLE OF AUTHORITIES
CONTINUED

PAGE(S)

*Orostream LLC v. ABS-CBN International*,
No. 2:15-cv-248-JRG, 2015 WL 5836949 (E.D. Tex. Oct. 1, 2015) ....................................17

*Parker v. Flook*,
437 U.S. 584 (1978)........................................................................................................15

*Securus Techs. v. Global Tel*Link Corp.*,
No. 3:13-CV-03009-K, 2015 WL 6703221 (N.D. Tex. Nov. 2, 2015) ....................................5

*Telinit Techs., LLC v. Alteva, Inc.*,
No. 2:14-cv-369, 2015 WL 5578604 (E.D. Tex. Sept. 21, 2015).............................................5

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)........................................................................... *passim*

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015)......................................................................9, 17

**Statutes**

35 U.S.C. § 101 ............................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure
12(b)(6) ........................................................................................................................1
12(c) ................................................................................................................1, 2, 4, 5

## RELATIONSHIP TO BRIEFING IN RELATED CASES

The patent at issue in this case, U.S. Patent No. 7,010,572 (the '572 patent), is asserted in five separate actions, all filed on February 23, 2015. Defendants join in filing this identical brief, which seeks judgment on the pleadings on the ground that the asserted patent is plainly invalid under 35 U.S.C. § 101. The actions are: No. 1-15-cv-00154 (Amazon.com, Inc.); No. 1-15-cv-00155 (eBay, Inc.); No. 1-15-cv-00156 (Facebook, Inc.); No. 1:15-cv-00157 (Google Inc.); and No. 1-15-cv-00158 (HomeAway, Inc.). The parties filing this brief are referred to jointly herein as "Defendants."

## I.     <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants move for judgment on the pleadings that the '572 patent is invalid because it claims nothing more than the abstract idea of using information in a message's destination address to look up the recipient's correct address, which is patent-ineligible under 35 U.S.C. § 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

Defendants first raised this section 101 issue in Motions to Dismiss under Rule 12(b)(6). The Court denied Defendants' Motions, concluding that "[p]rior to a claim construction hearing the Court is unable to assess whether the '572 Patent is directed to an abstract idea or, if it is, whether the '572 Patent claims a sufficiently inventive concept to render it a patent-eligible application."  (Dkt. 37 at 9.)  The Court simultaneously set an early *Markman* schedule, stating that Defendants' Motions "raise[d] a[] significant threshold issue," but that "claim construction was warranted prior to making that determination."  (Dkt. 38 at 2.)

In accordance with the Court's Order, the parties have engaged in an early claim construction process for the purpose of a section 101 analysis.  During this process, the parties agreed on the meaning of "email address"—the only claim term Plaintiff proposed for construction.  Defendants did not propose any claim terms for construction.  Thus, there are no disputed claim construction issues for the Court to address, and the "significant threshold [§ 101] issue" is now ripe for a resolution on the merits.  (*Id.*)

As discussed in Defendants' prior motions and as set forth herein, all asserted claims of the '572 patent are directed to the abstract idea of using information in a message's destination address to look up the recipient's correct address.  As an initial matter, that abstract idea has existed since address directories were first published centuries ago.  Applying the age-old idea of address directories to computers using the Internet does not make the asserted claims non-

abstract. *See Alice*, 134 S. Ct. at 2358 ("limiting the use of an abstract idea to a particular technological environment" does not confer patent eligibility) (citation omitted). Nor does automating the process of locating an email address using basic computer technology render the claims patent-eligible. *See id.* at 2359 (claims using computer to automate "well-understood, routine, conventional activities" are invalid).

Further, the asserted claims do not "contain[] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294, 1298) (2012)). (*See* Dkt. 21 at 14-18; Dkt. 27 at 6-10.) The claims do no more than claim the abstract idea of using information in a message's destination address to look up the recipient's correct address, and apply that idea using standard computer technology. This is not enough to support a "patent-eligible application." *See Alice*, 134 S. Ct. at 2357-2358.

Moreover, the fact that some of the asserted claims combine the idea of an email address directory with other basic, conventional computer functions, such as sending an email, sending a notification message to the author of an email, or searching a database, does not render the claims patentable. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-16 (Fed. Cir. 2014) (holding that claims setting forth "eleven steps for displaying an advertisement in exchange for access to copyrighted media" were abstract and unpatentable because all eleven steps involved "routine, conventional activity"). Therefore, the Court should grant Defendants' Motion on the Pleadings under Rule 12(c) and hold that the asserted claims of the '572 patent are invalid because they claim non-patentable subject matter.

## II.   **BACKGROUND**

Plaintiff filed separate lawsuits in this court claiming that five companies—Amazon, eBay, Facebook, Google, and HomeAway—infringe the '572 patent.

### A.     The '572 Patent

The '572 patent begins by presenting the unremarkable proposition that for a message to be sent, the sender must know the recipient's correct destination address.  For example, an email addressed to John Jones at john.jones@mega.com will not reach Mr. Jones if his correct electronic mail address is jjones@mega.com.  '572 patent at 5:44-48.

The '572 patent acknowledges that well-known solutions existed to this problem: "In an effort to provide a means of discovering correct email addresses, numerous directory databases have been established, whereby a person's or corporation's email address can be searched for based on key indicators such as name, address, telephone number, geographical location, and so forth."  *Id.* at 2:12-17.  The patentee critiques these solutions as "inconvenient to use because the person sending the email must access a directory and search for the desired email address as an extra step in the process of sending an email."  *Id.* at 2:19-22.  As further explained below, the '572 patent's claimed solution to the convenience problem is to automate the "extra step" of looking up the correct email address.  But the '572 patent fails to add any inventive concept for implementing this abstract idea.

### B.     The § 101 Issue is Ripe for Determination

The Defendants initially filed Motions to Dismiss Plaintiff's Complaint for failure to state a claim because the patent claims are invalid under 35 USC § 101.[1]  The Court denied those Motions, indicating it would first conduct claim construction proceedings before deciding the section 101 issue.  (Dkt. 37 in Case No. 1:15-cv-00154; Dkt. 34 in Case No. 1:15-cv-00155; Dkt. 37 in Case No. 1:15-cv-00156; Dkt. 29 in Case No. 1:15-cv-00158; and Dkt. 31 Case No. 1:15-

---

[1] Defendants Amazon, eBay, Facebook and HomeAway filed identical motions to dismiss, and identical replies in support of those motions.  (*See* Dkt. 21 and 27 in Case No. 1:15-cv-00154; Dkt. 20 and 26 in Case No. 1:15-cv-00155; Dkt. 19 and 29 in Case No. 1:15-cv-00156; and Dkt. 14 and 21 in Case No. 1:15-cv-00158.)  Google filed its own motion to dismiss and reply in support of its motion.  (*See* Dkt. 14 and 22 in Case No. 1:15-cv-00157.)

cv-00157.)  During the claim construction meet and confer process, Plaintiff specified that it was asserting a total of 25 of the 49 claims against the Defendants collectively, including all five of the patent's independent claims and twenty of the dependent claims; specifically, Plaintiff asserts claims 1, 2, 5, 9, 11-13, 16, 20, 22-24, 27, 31, 33-35, 38, 42, and 44-49.  Defendants did not propose any terms from these asserted claims for construction, and Plaintiff proposed only one: "email address."  The parties have agreed that "email address" should be construed as "a string of characters complying with an addressing format for transmission of an email message by the SMTP protocol."

Therefore, there are no claim construction disputes in this case and neither *Markman* briefing nor a *Markman* hearing is required at this time.  Given these recent developments, Defendants submit that the section 101 issue merits consideration before additional resources are expended in this matter.

## III.    LEGAL STANDARDS

### A.    Judgment on the Pleadings Under Rule 12(c) is Appropriate in this Case.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation and quotation omitted).  "A court in ruling on a motion for judgment on the pleadings may consider not only the pleadings themselves, but also any exhibits to the pleadings or matters incorporated by reference in the pleadings, as long as all the material allegations of fact are undisputed and only questions of law remain to be decided by the court . . . The ultimate question for the court in deciding a Rule 12(c) motion is whether, viewed in the

light most favorable to the plaintiff, the complaint states a valid claim for relief." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 834 (E.D. Tex. 2014) (Bryson, J., sitting by designation) (citations omitted).

Courts throughout the country, including this one, have decided the patentability of asserted claims under § 101 on Rule 12(c) motions. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming district court's ruling, on motion for judgment on the pleadings, that asserted claims were invalid under § 101); *Affinity Labs of Texas, LLC v. Amazon.Com, Inc.*, No. 6:15-CV-0029-WSS-JCM, 2015 WL 3757497 (W.D. Tex. June 12, 2015) (holding asserted claims invalid under § 101 on a Rule 12(c) motion for judgment on the pleadings); *GT Nexus, Inc. v. Inttra, Inc.*, No. C 11-02145-SBA, 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015) (same); *Securus Techs., Inc. v. Global Tel*Link Corp.*, No. 3:13-CV-03009-K, 2015 WL 6703221 (N.D. Tex. Nov. 2, 2015) (same); *CyberFone Sys., LLC v. Lexmark Int'l, Inc.*, __ F. Supp. 3d __, No. 14-489-SLR, 2015 WL 5906859 (D. Del. Oct. 8, 2015) (same); *Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-cv-369, 2015 WL 5578604 (E.D. Tex. Sept. 21, 2015) (same).

**B.      35 U.S.C. § 101 and Controlling Case Law.**

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  In *Alice*, the Supreme Court established a two-part test for determining patentability under 35 U.S.C. § 101 requiring a court to: (1) determine whether a claim is "directed to" a patent-ineligible abstract idea; and (2) if so, consider the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea.

*See Alice*, 134 S. Ct. at 2355.  The Supreme Court was also explicit that token additions are insufficient as a matter of law to confer patent eligibility; neither limiting the idea "to a particular technological environment," such as the Internet, nor implementing the idea using "wholly generic computer[s]" will save claims directed towards patent-ineligible subject matter.  *Id.* at 2358; *see also DDR Holdings, LLC v. Hotels.com*, L.P. 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("Although many of the claims recited various computer hardware elements, these claims in substance were directed to nothing more than the performance of an abstract business practice on the Internet or using a conventional computer.  Such claims are not patent-eligible.").

*Alice*'s two-step framework controls the analysis here.  First, the Court must determine whether the '572 patent claims are directed to an underlying abstract idea.  *Alice*, 134 S. Ct. at 2355.  Second, the Court must determine whether the '572 patent claims "contain[] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298).

## IV.    <u>ARGUMENT</u>

Plaintiff asserts that Defendants collectively infringe all five of the '572 patent's independent claims, and twenty dependent claims.  All of the asserted claims are directed to the non-patentable abstract idea of using information in a message's destination address to look up the recipient's correct address.  The claims then apply that abstract idea using standard computer technology.  Because the claims disclose nothing more than this abstract idea and generic means for implementing this idea using standard computer technology, they are unpatentable under § 101.

A.   *Alice* **Step One: Using Information In A Message's Destination Address To Look Up The Recipient's Correct Address Is An "Abstract Idea."**

Recent Supreme Court and Federal Circuit decisions leave no doubt that the idea in the asserted claims—using information in a message's destination address to look up the recipient's correct address—is abstract.  The Supreme Court has held that fundamental principles for "organizing human activity" such as providing escrow services, *Alice*, 134 S. Ct. at 2356-57, and hedging, *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), are abstract ideas.  In addition, the Federal Circuit has specifically held that "[t]he concept of data collection . . . and storage" is similarly abstract.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *see also Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("abstract process of gathering and combining data" is ineligible for patent protection); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) ("[D]ata-gathering steps cannot alone confer patentability.").  If (1) principles for organizing human activity are unpatentable, and (2) the concept of collecting data is also unpatentable, then, *a fortiori* (3) organizing collected data about humans is also unpatentable.  And that is precisely what A Pty's non-patentable asserted claims do.

The fact that the fundamental idea of the asserted claims could be implemented without the aid of computers confirms that the claims are directed to an unpatentable abstract idea.  The Federal Circuit's landmark decision in *CyberSource* is particularly instructive here.  There, as here, the patent used relationships between virtual addresses and other related information.  654 F.3d at 1367-68.  The *CyberSource* patent claimed methods and systems for detecting online credit card fraud using "'Internet address' information" including "IP addresses" and "e-mail addresses."  *Id.* at 1367.  First, information about online credit card transactions, including the card number, the cardholder's name, and (most importantly) the internet address from which the

transaction originated was collected.  That information was then compared to other transaction data to ferret out fraud by, for example, determining if transactions using numerous different credit card numbers all originated from the same internet address.  *Id*. at 1370-73.

The Federal Circuit held that the patent claimed an abstract idea because all the steps "can be performed in the human mind."  *Id*. at 1372.  A human could (1) "simply read[] records of Internet credit card transactions from a preexisting database," (2) "writ[e] down a list of credit card transactions form a particular IP address," and then (3) look for potential fraud by seeing if transactions using numerous credit cards "all originated from the same IP address."  *Id*. at 1372-73.  The same is true here.  Just as a human in *CyberSource* could use one piece of information (the internet address associated with an online credit card transaction) to identify another piece of information (whether the transaction is fraudulent), so too could a human here use one piece of information (e.g., an intended recipient's name) in a message's destination address to identify another piece of information (the recipient's correct address).  Both are abstract ideas and both are unpatentable.  *See CyberSource*, 654 F.3d at 1371 ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas.").

## B.    *Alice* Step Two:  The '572 Claims Add Nothing to the Abstract Idea Except a Field of Use or the Use of Well-Known, Routine, Conventional Elements.

To meet the threshold requirement of validity under section 101, a patent claim reciting an abstract idea must add "significantly more"; the patent claim must provide an unconventional combination of elements in the physical realm that restricts the claim to an inventive and particular application of the abstract idea.  *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).  Merely limiting the claim with field-of-use restrictions, or merely adding a conventional combination of elements in that field, is insufficient.  *Alice*, 134 S. Ct. at 2358-59; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

Here, the asserted claims of the '572 patent disclose nothing more than the abstract idea of using information in a message's destination address to look up an address in a directory, and apply that idea using standard computer technology.  That is not enough to support a "patent-eligible application" of the abstract idea disclosed in the asserted claims.  *See Alice*, 134 S. Ct. at 2357-58.  That some of the asserted claims combine the idea of an email address directory with other basic computer functions—such as sending an email, or sending a notification message back to the author of an email—similarly fails to render the claims patentable.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-16 (Fed. Cir. 2014) (holding that claims setting forth "eleven steps for displaying an advertisement in exchange for access to copyrighted media" were abstract and unpatentable because all eleven steps involved "routine, conventional activity").

Since briefing closed on the prior motions to dismiss, the Federal Circuit has decided two additional cases addressing the patentability of claims under § 101—finding the claims invalid in both cases.  These cases further confirm that the asserted claims—which merely recite an abstract idea and applications of that idea using generic computer technology—are invalid.  *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368-70 (Fed. Cir. 2015) (finding claims of two patents invalid as claiming abstract ideas, noting that one had "no inventive concept" because "[t]he recited elements, e.g., a database, a user profile, . . . and a communication medium, are all generic computer elements," and "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea"); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333-34 (Fed. Cir. 2015) (finding that patent claimed an abstract idea and did not "have sufficient additional limitations to transform . . . any claim into a patent-eligible application of an abstract idea" because "the function performed by the computer at each step is purely conventional.").

### C.     Each of the Asserted Claims Fails the Two-Part *Alice* Test

The full text of claim 1 of the '572 patent states as follows:

> A method of conveying an email message including an address field containing a descriptor of an intended recipient of the email message, the descriptor being different from an email account name of the intended recipient, the method comprising:
>
>> sending a database query to a database containing a plurality of identifying elements associated with the intended recipient and email addresses to search for the email address associated with the descriptor, wherein said descriptor comprises at least one of the identifying elements; and
>>
>> transmitting said email message to said email address found during said search of the email addresses if a unique email address is located.

Claim 1 describes the patent's abstract idea—using information in a message's destination address to look up the recipient's correct address—in the context of email. However, applying an abstract idea to a particular field of use or technological environment does not make the idea non-abstract. *See Alice*, 134 S. Ct. at 2358 ("limiting the use of an abstract idea to a particular technological environment" does not confer patent eligibility) (internal quotations and citation omitted). Next, claim 1 adds that an email is then sent to the address. But sending an email is a quintessential "routine, conventional activity" that does not render this claim patentable. *See Ultramercial*, 772 F.3d at 714-16. The claim relies only on admittedly generic computer functions such as sending information in the email address field to a database, searching the database for a corresponding email address, and sending an email to the address found during the search. As the claim discloses no technical innovations to apply the abstract idea of using information in a message's destination address to look up the recipient's correct address, it is unpatentable.

Claim 12 similarly states as follows:

> A method for handling undeliverable electronic mail, comprising:
>
> > receiving an email message including an invalid destination address that includes a descriptor;
> >
> > sending a database query to a database, which includes a plurality of identifying elements associated with said invalid destination address, to search for records partially or completely matching parts of said invalid destination address, wherein said descriptor comprises at least one of said plurality of identifying elements; and
> >
> > forwarding said email message to a valid unique email address retrieved from said database according to the result of said search for records.

Like claim 1, claim 12 merely describes the abstract idea of using information in a message's destination address to look up the recipient's correct address, applies that idea to the situation where the author inputs an invalid email address, and adds that the email is forwarded to the address located by the search.  Claim 12 fails *Alice* for the same reasons claim 1 fails.

Independent claim 23 is similar to claim 12, but instead of automatically sending the email message to the address located by searching the database, the database search results are sent back to the author.  Claim 23 recites in its entirety:

> A method for conveying an email message comprising:
>
> > receiving an email address forwarded by a sender, said email message including an invalid destination address that includes a descriptor;
> >
> > sending a database query to a database, which includes a plurality of identifying elements associated with said invalid destination address, to search for records partially or completely matching parts of said invalid destination address, wherein said descriptor comprises at least one of said plurality of identifying elements; and
> >
> > sending a notification message to the sender of the results of said database search.

Claim 23 discloses no technical innovation to implement the patent's abstract idea of using information in a message's destination address to look up the recipient's correct address. Instead, claim 23 merely swaps the final conventional step in claim 12—forwarding the email to

the address found by the search—with the equally conventional step of sending the search results back to the email's author.  But swapping one conventional computer function for another does not render this claim patentable.  *See Ultramercial*, 772 F.3d at 714-16 (holding that claims requiring eleven steps were unpatentable because "[t]he majority of those steps comprise the abstract concept of offering media content in exchange for viewing an advertisement" and the addition of "routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter").

Independent claim 34 is similar to claim 1, but adds that the identifying information written in the address field is "selected from a plurality of identifying elements," and instead of "transmitting" the email message after identification of a unique email address, the message is "forwarded."  The claim does not explain how the "selection" or "forwarding" are completed, and these routine, generic functions do not render this claim patentable.  Claim 34 recites in its entirety:

> A method of conveying an email message comprising:
>
> > receiving an email message from its sender, said email message including an address field containing a descriptor of the intended recipient of said email message and which is different from an email account name of said intended recipient, the descriptor being selected from a plurality of identifying elements associated with the intended recipient;
> >
> > sending a database query to a database, which contains a plurality of identifying elements for a plurality of recipients and email addresses to locate a unique email address associated with said descriptor; and
>
> > forwarding the message to the email address yielded by the database.

As claim 34 discloses no novel or innovative means for accomplishing the patent's abstract idea, it is not patentable.

The final independent claim 45 is much like claim 12, but it omits the step of actually sending the email after identifying a unique email address, and includes a list of the identifying information that is stored in the database.  Claim 45 recites in its entirety:

> A method of determining an email address comprising:
>
> > maintaining a database where email address are linked with a plurality of identifying elements relevant for a person at each email address so that a user can provide one or more of the identifying elements;
>
> > wherein upon recognition by a server that information in an address field of the email address is insufficient or not in the correct form of delivery, a search is conducted of the database to determine a relevant email address, the plurality of identifying elements including at least one of a given name, surname, address, name of business, and/or telephone number of said person.

Claim 45's disclosure of a list of the types of identifying information (e.g., name, address, etc.) that can be included in the database does not render the claim patentable.  First, the list contains no surprises; these are precisely the sort of identifying data typically used to locate someone's address.  Second, the claim discloses no innovative means of storing or searching this data.  It merely recites that this data is stored in a database and searched using conventional computer technology.  *Cf. Ultramercial*, 772 F.3d at 712 (finding no inventive concept in the patent where one of the claims included receiving "media products ... being comprised of at least one of text data, music data, and video data").

The asserted dependent claims are similarly limited to non-inventive applications of the idea of using information in a message's destination address to look up the recipient's correct address.  The vast majority of the dependent claims fit into one of two categories.  Dependent claims 2, 11, 13, 22, 24, 33, 35, 44, and 49 list types of identifying information that are kept in the database or put in the "to" field of the email message.  These lists are comprised of predictable types of identifying information such as personal name, physical address, phone

13

number, and other common types of identifying information.  Just as in claim 45, these lists do not, therefore, provide the sort of inventive step required for patentability.  Dependent claims 5, 9, 16, 20, 27, 31, 38, and 42 disclose sending a notification message back to the author of the email address.  These claims do not disclose any special or inventive method for sending this notification; they merely recite that a notification is sent to the author using standard computer technology.  *See* '572 patent at 1:41-45.

Plaintiff additionally asserts a number of claims that depend on claim 45 and do not fit into the above categories.  Claims 46 and 47 address whether the email server and database discussed in claim 45 are located together or separately.  No technical details about how to set-up the database or server are disclosed, and the idea that they could be together or separate is not patentable.  Dependent claim 48 adds to claim 45 the idea of sending the correct email address back to the server, so that the server may send the email message.  This merely adds to claim 45 applications that were disclosed in the other independent claims, but omitted from claim 45.  This claim is therefore similarly unpatentable.

Thus, under the two-step *Alice* framework, the asserted claims are invalid because they recite an abstract idea and lack an inventive concept sufficient to transform the claimed abstract idea into patent-eligible subject matter.  *See Alice* at 2357; *Ultramercial,* 772 F.3d at 715 (claims having "no particular concrete or tangible form" are invalid); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (claims "not tied to a specific structure or machine" are abstract and invalid).

**D.    The Agreed Construction of "email address" Confirms that the '572 Patent is Directed to an Abstract Idea Applied Using Well-Known, Routine, Conventional Means.**

During the pre-*Markman* process, Plaintiff identified a single term requiring claim construction: "email address."  Defendants did not propose any terms to be construed.  A Pty's

proposed construction for this term, which was accepted by all Defendants, is "a string of characters complying with an addressing format for transmission of an email message by the SMTP protocol."

Applying the '572 patent's abstract idea to the conventional setting of SMTP-compliant electronic mail does not render the claims patentable.  Applying an idea to a particular field of use or technological environment does not make the idea non-abstract.  *See Alice*, 134 S. Ct. at 2358 ("limiting the use of an abstract idea to a particular technological environment" does not confer patent eligibility) (internal quotations and citation omitted); *see also Parker v. Flook*, 437 U.S. 584, 590 (1978) ("[T]he Pythagorean theorem would not have been patentable, or partially patentable, because a patent application contained a final step indicating that the formula . . . could be usefully applied to existing surveying techniques.").  As the '572 patent explains, the SMTP protocol was well-known in the art at the time the patent was filed:

> "Email messages are typically structured according to a protocol known as SMTP (Simple Mail Transfer Protocol) which includes specification of an addressing format that enables email messages to be routed or directly delivered to the correct destination SMTP server."

'572 patent at 1:41-45.

Thus, consistent with Defendants' position throughout this case, the '572 patent does nothing more than take an abstract idea and use well-known, conventional means—the SMTP protocol—to implement it on the Internet.  This is not patentable.  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("Although many of the claims recited various computer hardware elements, these claims in substance were directed to nothing more than the performance of an abstract business practice on the Internet or using a conventional computer. Such claims are not patent-eligible.")

Furthermore, that the claims are limited to the generic environment of SMTP-compliant emails does not mean that they are "rooted in computer technology."  *Id.* at 1257.  As discussed, *supra*, the purported problem the '572 patent addressed was the "extra step" required to look up a destination email address.  This is a far cry from what the Federal Circuit found patent-eligible in *DDR Holdings*:

> "In more plain language, upon the click of an advertisement for a third-party product displayed on a host's website, the visitor is no longer transported to the third party's website.  Instead, the patent claims call for an 'outsource provider' having a web server which directs the visitor to an automatically-generated hybrid web page that combines visual 'look and feel' elements from the host website and product information from the third-party merchant's website related to the clicked advertisement.  In this way, rather than instantly losing visitors to the third-party's website, the host website can instead send its visitors to a web page on the outsource provider's server that 1) incorporates 'look and feel' elements from the host website, and 2) provides visitors with the opportunity to purchase products from the third-party merchant without actually entering that merchant's website."

*Id.* at 1257-58.

In contrast, the '572 patent simply claims using information in a message's destination address to look up the correct email address before sending an email message and in various cases either transmitting/forwarding the message or notifying the sender of the results of a database lookup.  Applying the addressing format specified by the SMTP protocol to send an email using the system claimed by the '572 patent, as required under A Pty's construction of "email address," does not "override[] the routine and conventional sequence of events ordinarily triggered by the [sending of an email]."  *Id.* at 1258.  Similarly, automation of the database lookup to find the correct email address before sending that email is not patent eligible because needing to know the recipient's correct address before sending a message is not a "challenge particular to the Internet" nor does it solve a problem "specifically arising in the realm of computer networks."  *Id.* at 1257; *see also Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, No.

6:15-cv-0029-WSS-JCM, 2015 WL 3757497, at *12 (W.D. Tex. Jun. 12, 2015) (rejecting plaintiff's reliance on *DDR Holdings* for the same reasons) (objections overruled).   Moreover, the patent notes that the database is searched using "well-known software techniques."  '572 patent at 6:61-63.   Thus, the agreed-upon construction of "email address" confirms that the asserted claims are invalid under § 101.

In *Orostream LLC v. ABS-CBN International*, another court recently rejected a similar attempt by the plaintiff in that case to apply *DDR Holdings* to patents "relate[d] to computer-implemented systems and methods for transferring information efficiently." No. 2:15-cv-248-JRG, 2015 WL 5836949, at *1 (E.D. Tex. Oct. 1, 2015).   Just as here, the asserted *Orostream* patent claimed a solution to a problem that existed prior to computers.   In that case, "adjusting information flow to minimize delay."  *Id*. at 3.   The court in *Orostream* rejected plaintiff's argument that the patent was non-abstract "because it [wa]s rooted in computer network technology," concluding that "the problem of adjusting information flow to minimize delay existed before computer networking."  *Id.*   Here, too, A PTY argues that its database lookup is different than real-world directories because it is applied to email.  *Id*.   But applying a well-known abstract idea to a new technological environment is not enough to make the claims non-abstract.  *Id.*   Similarly, the fact that the abstract idea is applied to a specific environment does not suffice to supply an inventive concept.   As the court in *Orostream* concluded, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Id.* at *4 (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)); *see also Versata*, 793 F.3d at 1333, 1335.   The '572 patent does not claim

anything that a person could not do without the aid of a computer, and thus the asserted claims are patent-ineligible.

## V.    <u>CONCLUSION</u>

For the reasons stated above, and in the Defendants' previous Motions to Dismiss, each asserted claim of the '572 patent is directed to a non-patentable abstract idea.   Therefore, defendants are entitled to judgment on the pleadings that the asserted claims of the '572 patent are invalid under section 101.

Respectfully submitted,

/s/ Nosson D. Knobloch
Nosson D. Knobloch (*pro hac vice*)
nosson.knobloch@bartlti-beck.com
John M Hughes (*pro hac vice*)
john.hughes@bartlit-beck.com
Daniel C. Taylor (*pro hac vice*)
daniel.taylor@bartlit-beck.com
BARTLIT BECK HERMAN
 PALENCHAR & SCOTT LLP
1899 Wynkoop Street, Suite 800
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140

Adam K. Mortara (*pro hac vice*)
adam.mortara@bartlit-beck.com
BARTLIT BECK HERMAN
 PALENCHAR & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440

Michael Merriman (#24085975)
mmerriman@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 474-0731

Counsel for Defendant
AMAZON.COM, INC.

November 18, 2015

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 18, 2015 all counsel of record were served with a copy of this document via the Court's CM/ECF system.

In addition, at my direction, counsel for Plaintiff A PTY Ltd were personally served via courier today at:

**DiNovo Price Ellwanger & Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731

*/s/ Nosson D. Knobloch*
Nosson D. Knobloch